IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| DA'RAE SOLOMON<br>406 N. Streeper St.<br>Baltimore, MD 21224<br><br>Plaintiff,<br><br>v.<br><br>TOWSON CROSSING APARTMENTS<br>OWNER LLC<br>160 Clubhouse Rd.<br>King of Prussia, PA 19406;<br><br>MORGAN PROPERTIES TRUST<br>160 Clubhouse Rd.<br>King of Prussia, PA 19406;<br><br>and<br><br>NATIONAL CREDIT AUDIT<br>CORPORATION<br>1100 Alderman Dr.<br>Alpharetta, GA 30005;<br><br>Defendants. | Civil Action No.: 1:24-cv-1326<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1. Defendants Towson Crossing Apartments Owner LLC ("Towson Crossing") and Morgan Properties Trust ("Morgan") (collectively, the "Building Defendants") failed to execute a lease with Plaintiff Da'Rae Solomon ("Plaintiff") but nonetheless directly and indirectly reported negative information about her to consumer reporting agencies and engaged Defendant National Credit Audit Corporation ("NCAC") to attempt to collect on an alleged debt, in violation of the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act

1

("FCRA"), the Maryland Consumer Debt Collection Act ("MCDCA"), and the Maryland Consumer Protection Act ("MCPA").

## JURISDICTION

2. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District because acts and transactions that give rise to this action occurred here.

## PARTIES

5. Plaintiff Da'Rae Solomon ("Plaintiff") is a natural person who resides in Baltimore, Maryland.

6. Plaintiff is a consumer as defined by 15 U.S.C. § 1681a(b) and (c) and § 1692a(3).

7. Towson Crossing is a Delaware corporation that does business in Maryland and has its principal place of business in King of Prussia, Pennsylvania.

8. Morgan is a Maryland real estate investment trust with its headquarters in King of Prussia, Pennsylvania.

9. Upon information and belief, Morgan owns Towson Crossing.

10. At all times relevant herein, the Building Defendants acted by and through one another.

11. Morgan is a furnisher of information to specialized consumer reporting agencies including RentGrow and Experian Rent Bureau.

12. NCAC is an Illinois corporation doing business in Maryland and with its principal place of business in Alpharetta, Georgia.

13. NCAC is a furnisher of information to the major credit reporting agencies, including TransUnion, Experian, and Equifax.

14. NCAC regularly collects debts on behalf of other entities and is therefore a "debt collector" as that term is defined in 15 U.S.C. § 1692a(6) and Md. Code Comm. Law § 14-201(b).

## FACTS

15. On or about October 22, 2021, Devin Frazier ("Frazier") executed a lease (the "Lease") with Towson Crossing for an apartment in that complex (the "Apartment").

16. Jacqueline Applegate ("Applegate") countersigned the lease on behalf of Towson Crossing on or about October 26, 2021.

17. The Lease erroneously listed Apartment AT04B2 rather than DB17T2, requiring Frazier to move to a different unit the day after he moved in.

18. Applegate and other members of the property management team use "@nmorganproperties" e-mail addresses and included the Morgan logo in correspondence.

19. In or around November 2021, Plaintiff moved into the Apartment.

20. Shortly before or about the time she moved in, on or about November 20, 2021, Plaintiff submitted a rental application to the Building Defendants and paid the associated fee.

21. Plaintiff expected that, because the Building Defendants were more familiar with the process than she was, they would inform her as to what, if any, additional steps were needed to establish her tenancy.

22. Unbeknownst to Plaintiff, upon information and belief, the Building Defendants never fully processed Plaintiff's application.

23. Plaintiff, however, assumed that everything was in order, as she had heard nothing to the contrary from the Building Defendants.

24. Plaintiff and Frazier paid the rent for the Apartment for each month they resided there.

25. Plaintiff did not become aware that her name was not associated with the Apartment until in or around February 2022, when building management refused to speak with her about issues such as apartment maintenance.

26. At or about that time, Plaintiff requested a copy of the Lease from the Building Defendants, but they refused to provide it to her.

27. On or about March 2, 2022, Plaintiff visited the management office to inquire about parking passes and spoke to Joanna Edgerton ("Edgerton"), an agent for the Building Defendants, who informed Plaintiff that she was not listed on the lease for the Apartment.

28. On or about March 7, 2022, the Building Defendants advised Plaintiff that she needed to sign a Resident Add-On Addendum form.

29. Plaintiff and Frazier both executed the form on or about March 7, 2022, which Edgerton countersigned on behalf of the Building Defendants. *See* Signed Add-On Form, attached hereto as Exh. 1.

30. On or about that same day, Plaintiff also signed and initialed a residential parking permit form.

31. The Add-on Form specifically states, in capital letters, "THIS FORM IS INVALID AND NO KEYS WILL BE ISSUED UNLESS ALL CURRENT RESIDENT(S)

AND NEW RESIDENT(S) HAVE SIGNED THIS ADDENDUM, AND ALL NEW RESIDENT(S) HAVE INITALED EACH PAGE OF THE LEASE, AND SIGNED ON THE SIGNATURE PAGE."

32. Nonetheless, the Building Defendants did not provide Plaintiff or Frazier with any additional documents to sign or initial, nor did they provide Plaintiff with a full copy of the lease for the Apartment, despite repeated requests.

33. Indeed, the e-mail from Edgerton, dated March 7, 2022, stated only, "Please sign the roommate add on addendum and fill out the parking addendum too, so I can issue the parking pass to you."

34. The Add-On Form, by its terms, did not and could not bind Plaintiff to the lease for the Apartment absent her signature on the lease.

35. As the Building Defendants never provided Plaintiff with the lease, she never signed it.

36. In or around early April 2022, Plaintiff and Frazier moved out of the Apartment due to uninhabitable conditions, including, but not limited to, black mold that the Building Defendants failed to properly remediate.

37. Following her departure, Plaintiff received no further direct communication, invoices, or bills from the Building Defendants.

38. Morgan purportedly issued a move-out statement, dated May 17, 2022, to Frazier only.

39. A copy of the move out statement that Plaintiff later obtained through a consumer complaint process indicates a balance without identifying what charges comprise that balance.

**Collection Communications from NCAC**

40. Upon information and belief, NCAC acted as an agent for the Building Defendants at all times relevant hereto.

41. On or about August 2, 2022, NCAC, through its agent Ellen Garner ("Garner"), sent Plaintiff an e-mail stating that Plaintiff supposedly owed $3,130.21 to Towson Crossing.

42. On or about that same day, Plaintiff disputed the debt by phone and e-mail and indicated that the debt did not belong to her.

43. On or about August 2, 2022, Garner, on behalf of NCAC, e-mailed Plaintiff, attaching a ledger and a copy of the Lease that did not have Plaintiff's signature, and stating, "Attached is all documentation that substantiates that you are financially responsible for the above subject account balance.  We have been instructed to inform you that all of your charges have been reviewed with the property manager.  They were confirmed valid according to the terms of your Lease and all applicable laws."

44. Plaintiff responded by e-mail pointing out that her name is not on the Lease.

45. Garner further responded with a copy of the Add-on Form, erroneously stating, "Attached is the resident add on that Mrs. Solomon signed.  Therefore, she would *not* be released from the lease.  Per the signed agreement she would be leasing and financially responsible." (Emphasis in original.)

46. On or about August 18, 2022, NCAC sent Plaintiff a letter signed by its Dispute Resolution Department purporting to validate the debt.

47. The letter stated, "You should understand that this is a contractual debt incurred as a result of the *lease you signed* with Towson Crossing."  (Emphasis supplied.)

6

48. The letter enclosed what NCAC claimed was a "signed Lease Contract" and purpoted to have reviewed that document to "verify and validate" the alleged debt.

49. The purported contract enclosed, however, was only the Resident Add-on Form.

50. NCAC did not provide a copy of the Lease signed by Plaintiff, as no such document exists.

51. NCAC sent two follow up letters dated August 26, 2022, one a dunning letter signed by Garner and the other identical to the August 18, 2022 letter.

52. Though Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB") about Defendants' actions in or around December 2022, they took no steps to stop collection efforts.

53. Garner, on behalf of NCAC, sent Plaintiff another letter, dated January 19, 2023 threatening credit reporting consequences for failure to pay the alleged debt.

54. On or about March 13, 2023, Plaintiff reached out to Garner through counsel to explain that Plaintiff had never signed the Lease, rendering the Add-on Form invalid.

55. NCAC, through Garner, simply responded on or about that day with the same documents it had sent previously.

56. On or about January 4, 2024 and April 15, 2024, NCAC, through Garner, sent additional collection correspondence, the latter of which included an offer to delete the derogatory credit reporting in exchange for a reduced payment.

**Inaccurate Credit Reporting and Disputes**

57. Plaintiff obtained copies of her consumer reports from Equifax, TransUnion, and Experian in or around December 2022, which showed erroneous tradelines from NCAC that indicated an unpaid balance of $3,130.

58. On or about February 14, 2023, Plaintiff disputed the inaccurate NCAC tradelines to Equifax and TransUnion by mail, enclosing a copy of the Add-On Form, as well as invoices that showed only Frazier's name.

59. Plaintiff's disputes highlighted the language in the Add-On Form rendering it invalid absent her signature on a lease.

60. Upon information and belief, Equifax and TransUnion timely notified NCAC of the dispute.

61. NCAC verified the inaccurate information as accurate as to both disputes.

62. Plaintiff sent similar disputes to Experian via mail on or about February 14, 2023, and via its online portal on or about March 30 and 31 and April 17, 2023.

63. Upon information and belief, Experian timely notified NCAC of the disputes.

64. NCAC similarly verified that tradeline as accurate each time.

65. In or around March 2023, while attempting to apply for a new apartment, Plaintiff became aware that Defendants were also inaccurately reporting derogatory information to rental-specific consumer reporting agencies.

66. Specifically, in or around March 2023, Morgan reported to Experian Rent Bureau ("ERB") and to RentGrow that Plaintiff was delinquent on rent from December 2021 through May 2022 and that she continued to owe a balance of $3,130,

67. As Plaintiff had no valid rental relationship with Morgan, it should not have reported any information at all about Plaintiff.

68. On or about March 24 and 21, 2023, respectively, Plaintiff disputed Morgan's reporting to ERB and to RentGrow.

69. Upon information and belief, ERB and RentGrow timely notified Morgan of the dispute.

70. Within 24 hours, Morgan verified the reporting as accurate to ERB, and did the same within days to RentGrow.

71. On or about March 28, 2023, Plaintiff filed new CFPB complaints against Defendants, with no success.

72. On or about May 30, 2023, Plaintiff sent additional disputes by mail to Equifax, Experian, TransUnion, ERB, and AppFolio, enclosing the Add-On Form.

73. Upon information and belief, each consumer reporting agency timely notified NCAC and/or Morgan of the disputes.

74. NCAC and/or Morgan verified the inaccurate tradelines as accurate.

75. Only AppFolio removed the derogatory information.

**Further Misrepresentations by the Building Defendants**

76. In or around July 2023, Plaintiff sought assistance from the Maryland Office of the Attorney General.

77. In their e-mail response to Plaintiff's complaint, dated August 3, 2023, the Building Defendants, through Applegate, erroneously stated, "Ms. Solomon was added to the lease agreement of Devin Frazier on 3/7/2022," with a reference to the Add-On Form.

78. The e-mail further stated, "A moveout statement was generated and provided to all leaseholders after moveout."

79. The statement, however, lists only Frazier.

80. The e-mail reiterated that, "[t]he balance reported is accurate."

9

**Additional Damages**

81. As a result of Defendants' actions, Plaintiff has been rejected from multiple apartments and faces ongoing difficulties in securing suitable housing.

82. Also as a result of Defendants' actions, Plaintiff suffered significant emotional distress, manifest through symptoms including, but not limited to nausea, depression, headaches, extreme fatigue and lethargy, disorientation, and difficulty breathing.

## CLAIMS

### COUNT I
### Violation of the Fair Credit Reporting Act
### 15 U.S.C. § 1681 *et seq.* (FCRA)
### (against NCAC and Morgan)

83. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

84. Defendant Equifax willfully or, in the alternative negligently, violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's disputes from specialty or major consumer reporting agencies, by failing to appropriately report the results of its investigation, by failing to appropriately modify, delete, and/or block the information, in reckless disregard of the statutory requirements, Plaintiff's disputes and the plain language of their own records.

85. Specifically, neither NCAC nor Morgan should be reporting any information on Plaintiff to any consumer reporting agency, as she was never obligated on the Lease.

86. As a result of NCAC's and Morgan's violations, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

87. After numerous direct and indirect disputes that pointed out the plain language of the agreement on which NCAC and Morgan purported to rely, its actions and omissions were willful,

rendering them liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

88. Plaintiff is entitled to recover costs and attorney's fees from NCAC and Morgan pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT II
### Violation of the Fair Debt Collection Practices Act,
### 15 U.S.C. § 1692 *et seq.*
### (Against NCAC)

89. Plaintiff incorporates the allegations made in the foregoing paragraph as if set forth fully herein.

90. The alleged debt at issue arose in connection with rent and was therefore allegedly incurred for personal, household, or family purposes.

91. NCAC violated 15 U.S.C. §§ 1692e, e(2)(A), and (10) by falsely representing to Plaintiff in various correspondence that she owed more than $3,130 to the Building Defendants and that she was obligated in any way on the Lease without her signature thereon.

92. NCAC violated 15 U.S.C. § 1692e(8) by reporting to multiple consumer reporting agencies that Plaintiff had a delinquent debt of $3,130.

93. Plaintiff is therefore entitled to an award of actual and statutory damages and attorney's fees and costs pursuant to 11 U.S.C. § 1692k.

### COUNT III
### Violation of the Maryland Consumer Debt Collection Act,
### Md. Code Ann. Comm. Law. § 14-201 *et seq.*
### (Against All Defendants)

94. Plaintiff incorporates the allegations made in the foregoing paragraph as if set forth fully herein.

95. Defendants, directly or indirectly, violated Md. Code Ann. Comm. Law §14-202(8) by pursuing debt collection on an alleged debt that did not belong to Plaintiff, with knowledge or reckless disregard for the fact that it did not belong to her.

96. Defendants' conduct is of a type that violates the Fair Debt Collection Practices Act's prohibition on false representation of the character, amount, or legal status of any debt and on the use of false representation in the collection of debts, 15 U.S.C. §§ 1692e, e(2)(A), (8), and (10), and therefore violates Md. Code Ann. Comm. Law § 14-202(11).

97. After numerous rounds of direct and indirect disputes that highlighted the language of the Add-On Form that rendered it invalid, Defendants acted with knowledge or reckless disregard for the accuracy of their collection efforts, and their actions were, accordingly, willful.

98. As a result of the above violations of the Maryland Code, Plaintiff is entitled to actual damages and attorney's fees.

## COUNT IV
## VIOLATION OF MARYLAND CONSUMER PROTECTION ACT (MCPA)
### Md. Comm. Law §13-301 *et seq.*
### (Against All Defendants)

99. Each of the factual allegations is incorporated by reference herein.

100. Defendants are both "person[s]" under the MCPA, as that term is defined in Md. Code ann., Com. Law § 13-101(h).

101. Pursuant to Md. Code Ann., Comm. Law § 13-301(14)(iii), Defendants' violations of the MCDCA, as set forth in Count III, amount to per se violations of the MCPA.

102. Defendants also engaged directly or indirectly in a prohibited unfair or deceptive trade practices by falsely representing to Plaintiff that she was responsible for an alleged debt

connected to a lease that she had not signed, a material fact, in violation of Md. Code ann., Com. Law §§ 13-301(1); 13-303.

103. As a result of Defendant's unfair and deceptive trade practices detailed herein, Defendants deprived Plaintiff of truthful information regarding her alleged debt obligations.

104. Defendants' misrepresentations substantially induced Plaintiff's choices, including where to live and how to manage her finances.

105. As a result of the above violations of the Maryland Code, Plaintiff is entitled to actual damages and attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, to redress the injuries caused by Defendants' conduct as stated in the foregoing paragraphs, Plaintiff hereby requests the following relief:

- award of actual and compensatory damages;
- award of statutory damages;
- award of punitive damages;
- award of costs of litigation and reasonable attorney's fees
- an award of pre-judgment and post-judgment interest; and
- for such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all claims so triable.

Dated:  Washington, D.C.
May 7, 2024

                          Respectfully submitted on behalf of Plaintiff,

                          */s/ Courtney L. Weiner*
                          Courtney L. Weiner (#19463)
                          Law Office of Courtney Weiner PLLC
                          1629 K Street NW, Suite 300
                          Washington, DC 20006
                          PH: 202-827-9980
                          cw@courtneyweinerlaw.com

                          *Attorney for Plaintiff*